OPINION OF THE COURT
Howard Berler, J.
This is an application for an assisted outpatient order pursuant to Mental Hygiene Law § 9.60 (Kendra’s Law).
At the commencement of the hearing of this matter on May 7, 2003, the respondent made an oral application to dismiss the petition for lack of subject matter jurisdiction. The court directed the parties to submit written argument with respect to such application, and is now in receipt of the respondent’s “trial memorandum of law,” the petitioner’s “pretrial memo *470 randum of law,” the petitioner’s affirmation in opposition, and the respondent’s reply memorandum.
The respondent, who is 31 years of age, has been diagnosed as suffering from schizo-affective disorder, bipolar type, and a personality disorder with borderline features. His diagnosis also includes alcohol dependence and poly-substance abuse. This court initially directed an assisted outpatient plan for the respondent pursuant to an order and judgment dated October 31, 2002. The instant application seeks an additional period of treatment (see Mental Hygiene Law § 9.60 [k]). The proposed treatment plan offered by Marsha T. Karant, M.D. as part of the current application includes the provision that “the Respondent will cooperate with the Federation of Organizations to be his representative payee for the management of his funds.”
The respondent bases his motion on the inclusion of such provision of the proposed treatment plan. He asserts that “[t]here is no factual information included in any treatment plan worksheet or the supporting physician’s affirmation to support the recommendation that the respondent’s funds must be managed by a representative payee, or someone other than the present representative payee.”
The current representative payee is the respondent’s father, and according to the respondent’s trial memorandum of law, the respondent does not object to the continuance of the present arrangement, but does object to the substitution of the Federation of Organizations as the new representative payee. The petitioner, however, asserts that the respondent has indicated that he does not want his father to serve as the representative payee. This question can be addressed at the adjourned hearing.
As initially argued at the hearing, and now reiterated in his written submission, the respondent contends that the court has no subject matter jurisdiction to order that his funds be managed by a representative payee designated by the State, because such jurisdiction “as it pertained to the management of the respondent’s Social Security disability funds was within the exclusive province of the Social Security Administration.” Moreover, the respondent asserts that the proposed provision impermissibly abridges his rights under the Social Security Act because it precludes him from objecting to a particular nominee as the representative payee. Mr. Kanarskee also argues that Mental Hygiene Law § 9.60 was not intended to include the management of a respondent’s finances, “but rather *471 was intended to address outpatient care and treatment needs.” Such a power, he suggests, would be more properly addressed in a Mental Hygiene Law article 81 guardianship proceeding, or under article 41 of the Mental Hygiene Law pertaining, inter alia, to unified service plans.
The petitioner asserts, in essence, that the respondent’s arguments are premature. The petitioner contends that there is jurisdiction to consider assisted outpatient treatment application pursuant to Mental Hygiene Law § 9.60, and that the provisions of the proposed order directing implementation of a proposed plan do not become relevant until after the court determines that the petitioner has established the criteria set forth in Mental Hygiene Law § 9.60 (c). An improper demand for relief, if there is one, the petitioner asserts, does not determine the sufficiency of the pleading and does not deprive the court of subject matter jurisdiction. In this regard, the court notes that the statute contemplates that the hearing may be held before submission of the proposed treatment plan (see, Mental Hygiene Law § 9.60 |j] [3]), thus lending support to the petitioner’s argument.
In his reply memorandum the respondent indicates that he is not arguing that the court is deprived of subject matter jurisdiction to entertain an application for the extension of the assisted outpatient treatment order. He states that his argument is limited to the contention “that the Court is deprived, under the laws of preemption, of the authority to include a provision in a court-ordered assisted outpatient treatment plan requiring the respondent’s Supplemental Security Income must be managed by a representative payee designated by the County.”
Accordingly, there is no issue to be determined regarding the court’s subject matter jurisdiction to hear and determine this application for assisted outpatient treatment for the respondent. The only issue of law to be resolved is whether there is authority in this proceeding to require, as part of a treatment plan, provisions for the management of a respondent’s property, and more particularly, assuming that authority does exist, whether it includes the power to require the appointment of a particular representative payee for Supplemental Security Income (SSI) benefits.
The respondent asserts that because he has a right to challenge, before the Social Security Administration (SSA), an impermissible designation of a representative payee in the current proceeding, he “is faced with the potential that a lawful *472 and successful challenge before the SSA to the need for a representative payee could be construed by the County as noncooperation under the terms of the treatment plan, exposing [him] to the possibility of significant, adverse consequences.”
In response to this argument the petitioner cites Mental Hygiene Law § 9.60 (n), which provides:
“(n) Failure to comply with assisted outpatient treatment. Where in the clinical judgment of a physician, the patient has failed or has refused to comply with the treatment ordered by the court, and in the physician’s clinical judgment, efforts were made to solicit compliance, and, in the clinical judgment of such physician, such patient may be in need of involuntary admission to a hospital pursuant to section 9.27 of this article, or for whom immediate observation, care and treatment may be necessary pursuant to section 9.39 or 9.40 of this article, such physician may request the director, the director’s designee, or persons designated pursuant to section 9.37 of this article, to direct the removal of such patient to an appropriate hospital for an examination to determine if such person has a mental illness for which hospitalization is necessary pursuant to section 9.27, 9.39 or 9.40 of this article. Furthermore, if such assisted outpatient refuses to take medications as required by the court order, or he or she refuses to take, or fails a blood test, urinalysis, or alcohol or drug test as required by the court order, such physician may consider such refusal or failure when determining whether the assisted outpatient is in need of an examination to determine whether he or she has a mental illness for which hospitalization is necessary. Upon the request of such physician, the director, the director’s designee, or persons designated pursuant to section 9.37 of this article, may direct peace officers, when acting pursuant to their special duties, or police officers who are members of an authorized police department or force or of a sheriff’s department to take into custody and transport any such person to the hospital operating the assisted outpatient treatment program or to any hospital authorized by the director of community services to receive such persons. Such law enforcement officials shall carry out such directive. Upon the request of *473 such physician, the director, the director’s designee, or person designated pursuant to section 9.37 of this article, an ambulance service, as defined by subdivision two of section three thousand one of the public health law, or an approved mobile crisis outreach team as defined in section 9.58 of this article shall be authorized to take into custody and transport any such person to the hospital operating the assisted outpatient treatment program, or to any other hospital authorized by the director of community services to receive such persons. Such person may be retained for observation, care and treatment and further examination in the hospital for up to seventy-two hours to permit a physician to determine whether such person has a mental illness and is in need of involuntary care and treatment in a hospital pursuant to the provisions of this article. Any continued involuntary retention in such hospital beyond the initial seventy-two hour period shall be in accordance with the provisions of this article relating to the involuntary admission and retention of a person. If at any time during the seventy-two hour period the person is determined not to meet the involuntary admission and retention provisions of this article, and does not agree to stay in the hospital as a voluntary or informal patient, he or she must be released. Failure to comply with an order of assisted outpatient treatment shall not be grounds for involuntary civil commitment or a finding of contempt of court.”
The court agrees with the petitioner that there is nothing in this provision that would authorize the involuntary retention of the respondent in a psychiatric facility for merely asserting his rights before the Social Security Administration. Inasmuch as the inclusion of a provision concerning the appointment of a representative payee does not create any risks of involuntary hospitalization, incarceration or other form of punishment of the respondent, that concern does not serve as a ground for its exclusion from the treatment plan.
The respondent also argues that there is nothing included in Mental Hygiene Law § 9.60 suggesting that the New York Legislature intended that the authority of the court, in ordering the implementation of a proposed treatment plan, should extend to appointment of a representative for a respondent’s SSI benefits. He correctly notes that no language in the statute *474 refers to financial management as an aspect of the “mode of treatment” (see, L 1999, ch 408, § 2 [legislative findings]) or part of the “care coordination” (see, Mental Hygiene Law § 9.60 [i] [1]).
Nevertheless, “assisted outpatient treatment,” which the court is authorized to direct for a patient pursuant to Mental Hygiene Law § 9.60, is defined by the statute as including specified categories of services “and any other services within a local or unified services plan developed pursuant to article forty-one of [the Mental Hygiene Law]” (see, Mental Hygiene Law § 9.60 [a] [1]). The local services plan includes services for those suffering from alcoholism, alcohol abuse, substance abuse or substance dependence (see, Mental Hygiene Law § 41.03 [3]). The prior determination of this court, initially directing assisted outpatient treatment for the respondent, reflects that he suffers from conditions that render the local services plan applicable to him.
The petitioner advises that the “Suffolk County Department of Health Services contracts with the Federation of Organizations to specifically provide representative payee services, financial management and financial education to persons with mental illness as part of its local and unified services plan pursuant to article forty-one of the Mental Hygiene Law.” In view of that, the proposed treatment plan, which includes a provision for a representative payee, is authorized under Mental Hygiene Law § 9.60. The court notes, moreover, that the inclusion of such a requirement is rational and reasonable. Obviously, there is a concern that any individual suffering from alcohol or substance abuse will use available funds to purchase alcohol or the abused substance. Interposing a representative payee will reduce that risk.
This conclusion, however, does not, in and of itself, establish that the petitioner, this court, or any entity other than the Social Security Administration has the power to appoint a representative payee. To the extent that there is a conflict between the federal statutes and regulations and Mental Hygiene Law § 9.60 the respondent is plainly correct that the state law must yield to the supremacy of the federal law.
“Under the Supremacy Clause of article VI, Congress may enact laws that preempt state or local law. There are at least three ways in which preemption of local law may be accomplished. First, Congress may in express terms declare its intention to preclude state regulation in a given area. *475 Second, preemption may be implied when federal law is ‘sufficiently comprehensive to make reasonable the inference that Congress “left no room” for supplementary state regulation.’ Third, state law may be preempted ‘to the extent that it actually conflicts with a valid federal statute.’ Conflict preemption occurs either when ‘compliance with both federal and state regulations is a physical impossibility,’ or where state law ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” (Bedford Affiliates v Sills, 156 F3d 416, 426 [2d Cir 1998] [citations omitted].)
The respondent notes that under the applicable Federal statutes and regulations the authority to approve and appoint representative payees is reserved to the Social Security Administration (see, 42 USC § 405 [j]; § 383 [a] [2] [A] [ii]; 20 CFR 416.601, 416.610, 416.615, 416.620, 416.621, 416.625, 416.630, 416.635, 416.650). As he further notes, there is no direct evidence before the court that the Social Security Administration has approved the Federation of Organizations as an appropriate representative payee for the respondent. Further, the federal statute and regulations plainly allow a beneficiary to raise arguments before the Social Security Administration as to who should serve as such beneficiary’s representative payee (see, 42 USC § 405 [j] [2] [E]; 20 CFR 416.630).
In her affirmation in opposition, counsel for the petitioner, citing 20 CFR 416.601 (b) (1) and 42 USC § 1383 (a) (2) (A) (ii), states that “[t]he Social Security Administration must appoint a representative payee for an individual who, as here, is eligible for supplemental security income (SSI) benefits solely on the basis of disability, and drug addition [sic] or alcoholism is a contributing factor material to the determination of the disability.” Indeed 20 CFR 416.601 (b) (1) states, in part: “we must select a representative payee for an individual who is eligible for benefits solely on the basis of disability if drug addiction or alcoholism is a contributing factor material to the determination of disability.” (See also, 42 USC § 405 [j] [1] [B].)
While this provision supports the statement that a representative payee is mandatory because of the respondent’s addictions, it does not support the conclusion that an entity other than the Social Security Administration can designate and approve the representative payee, or that the beneficiary may be compelled to accept the local agency’s nomination.
*476 Citing 20 CFR 416.615 (a) the petitioner states that “[t]he Social Security Administration does not object to the naming of specific persons or agencies as representative payees in Kendra orders.” 20 CFR 416.615 provides:
“In determining whether to make representative payment we consider the following information:
“(a) Court determinations. If we learn that a beneficiary has been found to be legally incompetent, a certified copy of the court’s determination will be the basis of our determination to make representative payment.”
The petitioner’s reliance on this provision is not persuasive for two reasons. First, a finding that a patient requires assisted outpatient treatment under section 9.60 of the Mental Hygiene Law is not a finding of incompetence (cf., Mental Hygiene Law § 9.60 [o]).* Second, the cited regulation refers to the determination of the Social Security Administration to make representative payment. It makes no reference of a delegation of that power.
This is not to say, however, that the Social Security Administration would not consider a designation by the court of a proposed representative payee as a candidate worthy of serious consideration. The regulations do indicate that the Social Security Administration does place reliance on the finding of state courts, as evidenced by its placing reliance on the finding of incompetence by state courts (see, 20 CFR 416.615 [a]). The petitioner’s arguments suggest that past designations by the court of representative payees have been honored by the Social Security Administration. In this regard, the petitioner’s assertion that the Suffolk County Department of Health Services has contracted with the Federation of Organizations to specifically provide representative payee services, financial management and financial education to persons with mental illness as part of its local and unified services plan pursuant to article 41 of the Mental Hygiene Law supports the notion that the Social Security Administration would consider the Federation of Organizations an appropriate representative payee.
The court surmises, therefore, that the Social Security Administration has treated representative payees “appointed” by state court orders as nominations of proposed representa *477 tive payees to which the Social Security Administration accords considerable weight. The final determination of who shall be the representative payee, however, remains within the province of the Social Security Administration. The court thus concludes that a more appropriate treatment plan and court order should reflect that the designation of the representative payee is subject to the final approval of the Social Security Administration. The failure to make that clarification, however, does not render an order or treatment plan defective. Whether stated or not, the final approval of the representative payee shall be made by the Social Security Administration.
For the foregoing reasons, it is ordered that the application by the respondent to dismiss this proceeding, or for a ruling that the treatment plan may not include the designation of a proposed representative payee for his supplemental security income, is denied.

 Mental Hygiene Law § 9.60 (o) provides: “Effect of determination that a person is in need of assisted outpatient treatment. The determination by a court that a patient is in need of assisted outpatient treatment under this section shall not be construed as or deemed to be a determination that such patient is incapacitated pursuant to article eighty-one of this chapter.”